UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MURRELL D. LOVELESS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-02206-JMS-MJD |
| | ) | |
| RICHARD A. MCCORKLE Individually And In | ) | |
| His Official Capacity As Sheriff of Henry County, | ) | |
| REX A. HARROLD Individually And In His | ) | |
| Official Capacity As A Deputy Sheriff of Henry | ) | |
| County, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This case arises from a failed attempt to serve civil process at the home of Plaintiff Murrell

Loveless. Mr. Loveless alleges that Sheriff Richard McCorkle and Sheriff's Deputy Rex Harrold

violated federal and state constitutional law, as well as state statutory and common law when

Deputy Harrold entered Mr. Loveless' home without a warrant to serve civil process, and then

assaulted Mr. Loveless while inside. Defendants have moved for summary judgment on some of

Mr. Loveless' claims. For the reasons described below, the Court **GRANTS IN PART** and

**DENIES IN PART** Defendants' Motion.

## I.
### LEGAL STANDARD

A motion for summary judgment asks the Court to find that a trial is unnecessary because

there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment

as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear,

whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the

asserted fact by citing to particular parts of the record, including depositions, documents, or

affidavits.  Fed. R. Civ. P. 56(c)(1)(A).  A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated.  Fed. R. Civ. P. 56(c)(4).  Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment.  Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision.  A disputed fact is material if it might affect the outcome of the suit under the governing law.  *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016).  In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome-determinative.  *Montgomery v. American Airlines Inc.*, 626 F.3d 382, 389 (7th Cir. 2010).  Fact disputes that are irrelevant to the legal question will not be considered.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events.  *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016).  The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party.  *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009).  The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018).  It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder.  *Miller v. Gonzalez*, 761 F.3d 822, 827

(7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and

the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not

required to "scour every inch of the record" for evidence that is potentially relevant to the summary

judgment motion before them. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 573-74 (7th

Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving

party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II.
### BACKGROUND

The following factual background is set forth pursuant to the standards detailed above. The

facts stated are not necessarily objectively true, but as the summary judgment standard requires,

the undisputed facts and the disputed evidence are presented in the light most favorable to "the

party against whom the motion under consideration is made." *Premcor USA, Inc. v. American*

*Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

Defendant Richard McCorkle is the Sheriff of Henry County, Indiana. [Filing No. 37-2 at

4.] Defendant Rex Harrold is a sheriff's deputy in Henry County, and at the relevant time, he was

working as a civil process server for the county. [Filing No. 37-1 at 10.] Plaintiff Murrell Loveless

was approximately 70 years old at the time of the incident and lived in a house in Henry County,

along with several family members, including his granddaughter, Kayla. [Filing No. 37-3 at 7.]

On August 1, 2015, Deputy Harrold came to Mr. Loveless' home to service civil process on Kayla.

[Filing No. 37-1 at 16; Filing No. 37-4 at 10; Filing No. 37-4 at 35.] The house is located at the

end of a 175-foot driveway off of a county road. [Filing No. 37-3 at 21.] As Deputy Harrold drove

up the driveway to the home, he did not see a front entry door. [Filing No. 37-1 at 18.] He exited

his vehicle and walked to the east side of the home, where he located a front door that "was being

worked on" and seemed "unapproachable," as it was covered with or surrounded by boards.

3

[Filing No. 37-1 at 18.] He returned to the south side of the house, where he saw two garage doors that were closed. [Filing No. 37-1 at 18.] He also identified a "service" entry door into the home's attached garage, where there was a doorbell. [Filing No. 37-1 at 18; Filing No. 37-3 at 20.] Approximately 18 feet into the garage was a door that led from the garage into the interior of the home. [Filing No. 37-1 at 20.] From here, the parties present differing accounts of the events that transpired.

In Deputy Harrold's version of events, the service door into the garage was "standing wide open." [Filing No. 37-1 at 19.] Deputy Harrold testified that he did not see a doorbell at that door.[1] [Filing No. 37-1 at 48.] He entered via the open door and walked through the attached garage to the interior door to the home. [Filing No. 37-1 at 19.] The interior door was open approximately one inch, and Deputy Harrold knocked loudly on the door, announcing himself as "Sheriff's Department." [Filing No. 37-1 at 19.] Mr. Loveless then opened the door, cursing and shouting at Deputy Harrold to leave. [Filing No. 37-1 at 21.]

According to Mr. Loveless' evidence, the service door into the garage was always kept shut, as was the interior door into the house. [Filing No. 37-3 at 33; Filing No. 37-4 at 26; Filing No. 37-5 at 31-33.] None of the adults in the home heard a doorbell ring. [Filing No. 37-4 at 27; Filing No. 37-4 at 41; Filing No. 37-5 at 10; Filing No. 37-5 at 12-15.] Mr. Loveless heard a knock at the interior door, but did not hear the words "Sheriff's Department." [Filing No. 37-3 at 24.] He was upset to hear a knock at the interior door, because it was his expectation that visitors would

---

[1] Mr. Loveless' daughter and son-in-law, Lisa and Randy Garner, were both present in the home during the incident. Both attested that at the time of the incident, Deputy Harrold stated that he rang the doorbell prior to entering. [Filing No. 37-4 at 41-42; Filing No. 37-5 at 10-13.] When other deputies arrived following the incident, they verified that the doorbell was operational. [Filing No. 37-5 at 12-13.] During his deposition, however, Deputy Harrold testified that he did not see a doorbell at the exterior door. [Filing No. 37-1 at 48.]

ring the doorbell at the exterior door in order to gain entry. [Filing No. 37-3 at 22-24.] Mr. Loveless opened the door and did not recognize the person standing there as a police officer, because he was wearing a t-shirt and did not have a visible badge. [Filing No. 37-3 at 24.] Mr. Loveless told the individual to "get the f--- out" of his house. [Filing No. 37-3 at 24.]

A scuffle then ensued between Mr. Loveless and Deputy Harrold, about which the parties' accounts also differ. Both parties agree that that the service entry door hit Deputy Harrold's foot as he attempted to walk out of the garage. [Filing No. 37-3 at 39; Filing No. 37-1 at 23.] Mr. Loveless alleges that, at some point during the scuffle, Deputy Harrold hit him with his forearms, [Filing No. 37-3 at 26], and pushed him down onto or into the trunk of a car, [Filing No. 37-3 at 28], injuring Mr. Loveless' shoulder that was healing from a recent surgery, [Filing No. 37-3 at 39]. The parties agree that at some point, Deputy Harrold placed Mr. Loveless in handcuffs. [Filing No. 37-1 at 28; Filing No. 37-3 at 26.]

As a result of this incident, Mr. Loveless filed suit against Deputy Harrold and Sheriff McCorkle in their official and individual capacities, raising the following claims:

- Unreasonable search and seizure, in violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution, and Article I, Section 11 of the Indiana Constitution;

- Excessive force, in violation of 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution, and Article I, Section 11 of the Indiana Constitution;

- Common law battery;

- Common law assault;

- Common law trespass;

- Violation of Ind. Code § 35-33-5-7(e);

- Common law false imprisonment; and

- Intentional infliction of emotional distress, ("IIED").[2]

[Filing No. 1; Filing No. 33.] Mr. Loveless appears to raise all of these claims against Sheriff McCorkle and Deputy Harrold in both their official and individual capacities.

Defendants move for partial summary judgment, seeking resolution of the following claims:

- All Indiana constitutional claims, on the basis that the Indiana Constitution does not provide a private cause of action for violations;

- Section 1983 and Fourth Amendment search-and-seizure claim against Deputy Harrold in his individual capacity, on the grounds of qualified immunity;

- Both Section 1983 and Fourth Amendment claims (search-and-seizure and excessive force) against Sheriff McCorkle in his individual capacity, on the basis that he lacked individual involvement in any constitutional violation;

- Both Section 1983 and Fourth Amendment claims (search-and-seizure and excessive force) against Deputy Harrold and Sheriff McCorkle in their official capacities, on the basis of a failure to establish liability under *Monell*;

- Common law trespass and intentional infliction of emotional distress against Deputy Harrold and Sheriff McCorkle in their official capacities, on the basis of immunity under the Indiana Tort Claims Act; and

- Common law trespass, intentional infliction of emotional distress, battery, assault, and false imprisonment against Deputy Harrold in his individual capacity, on the basis of immunity under the Indiana Tort Claims Act.

[Filing No. 36.] The Motion is now fully briefed and ripe for the Court's review.

---

[2] In his brief in opposition to the Motion for Summary Judgment, Mr. Loveless references a state-law tort claim for "excessive force." [Filing No. 38 at 7.] An Indiana statute governs the use of force in the context of effecting an arrest, and Mr. Loveless does not invoke that statute in his Complaint or his Statement of Claims. *See* Ind. Code § 35-41-3-3. In his Statement of Claims, Mr. Loveless only refers to an excessive force claim in the context of his Fourth Amendment and Indiana constitutional claims. Aside from the statutory provision cited above, under Indiana law, "if an officer uses unnecessary or excessive force, the officer may commit the torts of assault and battery." *Wilson v. Isaacs*, 929 N.E.2d 200, 203 (Ind. 2010). Given the allegations in Mr. Loveless' Complaint, his Statement of Claims, and applicable Indiana law, the Court declines to construe Mr. Loveless' Complaint and Statement of Claims as alleging an independent tort for "excessive force."

## III.
### DISCUSSION

Mr. Loveless concedes that summary judgment is appropriate on the Indiana constitutional claims and the IIED claim, and the Court therefore **GRANTS** Defendants' Motion as to those claims. The Court addresses the remaining claims in turn.

### A. Deputy Harrold: Individual Capacity Search and Seizure Claim

Deputy Harrold argues that he is entitled to qualified immunity "as to a claim that he committed a trespass in violation of the Fourth Amendment because it would not have been clear to a reasonable police officer in the same or similar circumstances that a trespass was being committed." [Filing No. 36 at 7.] Deputy Harrold contends that it was not clearly established in August 2015 that an officer could not walk through a home's "open garage [service] door" into the attached garage to knock on the door inside. [Filing No. 36 at 9.] In response, Mr. Loveless points out that the parties dispute whether the garage service door was open. [Filing No. 38 at 9.] And Mr. Loveless argues that at the time in question, the law was clearly established that the Fourth Amendment draws a "firm line at the entrance to the house," and that an officer may not cross that line without a warrant. [Filing No. 38 at 11.] In reply, Deputy Harrold argues that the situation was, at best, ambiguous, and that he is therefore entitled to qualified immunity. [Filing No. 39 at 6.]

When a defendant asserts qualified immunity, "the plaintiff can proceed only if [he] can show two things: first, that the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and second, that the right was clearly established at the time of the alleged violation." *Hurt v. Wise*, 880 F.3d 831, 840-41 (7th Cir. 2018) (internal quotations and citations omitted). And a plaintiff may not define the right based on generalities: the "showing must be grounded in the particular context in which the problem arises." *Id.*

The Court begins by addressing the issue of the open or closed door. Deputy Harrold seeks to define the right at issue as whether it was clearly established that an officer may not enter an open garage door to knock on an interior door. But Mr. Loveless asserts that the door was closed, and he supports that assertion with his own deposition testimony, and the testimony of both his daughter and son-in-law. Defendants seem to suggest in a footnote that the Court must accept as true Defendants' factual assertion that the door was closed, because Mr. Loveless' evidence does not meet the personal knowledge requirement imposed by Federal Rule of Evidence 602. [Filing No. 36 at 4 ("Loveless claims that the door was closed. However, there is absolutely no indication that he had personal knowledge of this fact as of the time of Harrold's arrival, and other witnesses were also unable to personally know whether the door was open or closed. Loveless' daughter and son-in-law had not been in the garage before Harrold arrived.").]

Contrary to Defendants' contention, the personal knowledge requirement does not require that the Court ignore circumstantial evidence offered in support of a factual assertion. Mr. Loveless, his daughter, and his son-in-law all testified that the door into the garage was routinely or always kept closed. This testimony constitutes circumstantial evidence of the factual assertion that the door was closed when Deputy Harrold approached it. As this Court routinely instructs jurors, "the law makes no distinction between the weight to be given either to direct or circumstantial evidence." *See Federal Jury Instructions of the Seventh Circuit* (2017 ed.), pg. 17. Moreover, Federal Rule of Evidence 406 specifically provides for the admission of evidence regarding a person's habit or routine practice as evidence that on a particular occasion, the person acted in accordance with the habit or routine practice. *See* Fed. R. Evid. 406. And "[t]he Court may admit this evidence regardless of whether it is corroborated or whether there was an eyewitness." *Id.* In short, Mr. Loveless has proffered sufficient admissible evidence to create a

genuine dispute of material fact as to whether the garage entry door was open or closed at the time that Deputy Harrold approached it.

Deputy Harrold's argument as to qualified immunity is based upon his contention that the garage entry door was open, and therefore that his right to enter under the Fourth Amendment was, at best, ambiguous. But Mr. Loveless has provided admissible evidence in support of the factual assertion that the door was closed. And all parties agree that the garage service door provided the only entrance to the house, and there was a doorbell outside of it. Under the law existing in this Circuit at the time of the incident, a home's attached garage is subject to the Fourth Amendment's prohibition against unreasonable searches and seizures. *Vinson v. Vermillion Cty., Ill.*, 776 F.3d 924, 929 (7th Cir. Jan. 27, 2015) ("The [plaintiffs'] attached garage and the areas immediately surrounding their home and garage fit comfortably within the scope of the Fourth Amendment's protections of the home.") Viewing the facts in the light most favorable to Mr. Loveless, the nonmoving party, the Court **DENIES** Deputy Harrold's Motion for Summary Judgment on the basis of qualified immunity.

### B. Sheriff McCorkle: Individual Capacity Section 1983 Claims

Sheriff McCorkle moves for summary judgment as to all Section 1983 and Fourth Amendment claims against him in his individual capacity, on the basis that he lacked any personal involvement in any constitutional violation. [Filing No. 36 at 14.] Sheriff McCorkle argues that he was not present at Mr. Loveless' home during the incident in question, and that he only learned about those events when he returned to the office on the following Monday. [Filing No. 36 at 14.] Mr. Loveless responds that Sheriff McCorkle may be held liable in his individual capacity if action "pursuant to an official policy or custom of the Department caused a constitutional tort." [Filing No. 38 at 5-6.]

9

Individual liability under § 1983 "requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017).  Section 1983 "does not allow actions against individuals merely for their supervisory role of others." *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003).  A plaintiff "must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct."  *Colbert,* 851 F.3d at 657 (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault. An *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation.... A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary.") (emphasis in original)).  Although direct participation is not necessary, a supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.  They must in other words act either knowingly or with deliberate, reckless indifference." *Morfin v. City of E. Chicago*, 349 F.3d 989, 1001 (7th Cir. 2003).

In the context of a municipal official, the standards for individual and official capacity liability differ.  In support of his argument for individual capacity liability, Mr. Loveless cites only to a string of official capacity cases, which discuss the "policy or practice," *Monell* theory of liability that applies in the official capacity context.  But Mr. Loveless provides no argument or evidence as to Sheriff McCorkle's personal involvement in the events at issue, as required in the individual capacity context.  The Court addresses the official-capacity claims in a separate section, but as to the § 1983 individual capacity claims, it **GRANTS** Sheriff McCorkle's Motion for Summary Judgment.

**C. Sheriff McCorkle and Deputy Harrold: Official Capacity Section 1983 Claims**

Defendants move for summary judgment on Mr. Loveless' official-capacity Section 1983 and Fourth Amendment claims, arguing that Mr. Loveless has failed to put forward evidence that would establish the existence of any unconstitutional policies or customs. [Filing No. 36 at 12-14.] Defendants contend that while Mr. Loveless alleges that Defendants have engaged in an unconstitutional custom of failing to train sheriff's deputies, he has pointed to no evidence to support such allegations. [Filing No. 36 at 13-14.] In response, Mr. Loveless argues that the Sheriff's Department either trained its deputies, or operated based on an unwritten policy, to unconstitutionally enter homes based on a nonexistent Indiana "Clear View Statute". [Filing No. 38 at 13.] In reply, Defendants contend that the evidence does not establish that any training Deputy Harrold received on the "Clear View Statute" came from the Sheriff. [Filing No. 39 at 3.]

Under Section 1983, a suit brought against an officer in his official capacity is actually a suit against the government entity for which he works. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). And while there is no *respondeat superior* liability under Section 1983 for municipalities, they may be held liable when a violation results from a municipal policy or custom. *See Ball v. City of Indianapolis*, 760 F.3d 636, 643 (7th Cir. 2014). A custom or policy can take three forms: "(1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority." *Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1013 (7th Cir. 2000).

"A failure-to-train claim is actionable only if the failure amounted to deliberate indifference to the rights of others." *Miranda v. Cty. of Lake*, 900 F.3d 335 (7th Cir. 2018) (internal

citation omitted).  Deliberate indifference exists where the defendant either "(1) failed to provide adequate training in light of foreseeable consequences; or (2) failed to act in response to repeated complaints of constitutional violations by its officers." *Id.* (citing *Sornberger v. City of Knoxville, 434 F.3d 1006, 1029-30 (7th Cir. 2006)*).  The Seventh Circuit has explained that the failure to train must "reflect a conscious choice among alternatives." *Miranda*, 900 F.3d 335 (citing *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012)).

As a threshold matter, the Court addresses the scope of Defendants' Motion and Mr. Loveless' response.  Defendants move for summary judgment on both the illegal search and the excessive force claims raised under Section 1983 and the Fourth Amendment.  Mr. Loveless does not address the excessive force claim in his briefing, and the only allegedly offending policy or practice he identifies relates to the illegal search claim.  Mr. Loveless has therefore waived any argument in opposition to Defendants' Motion on the excessive force claim, and the Court **GRANTS** Defendants' Motion as to that claim. *See Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016) (undeveloped arguments are considered waived).

In support of his failure-to-train claim, Mr. Loveless cites to Deputy Harrold's deposition testimony as supporting the assertion that Sheriff McCorkle trained deputies to enter homes in violation of the Fourth Amendment, based on a "Clear View Statute" that does not exist.  Deputy Harrold testified that his training indicated that under the "Clear View Statute…if you have a clear, unobstructed view of your territory that you need to go, then you can approach that territory." [Filing No. 37-1 at 40.]  When asked whether that information was provided to him by the Sheriff of Henry County, Deputy Harrold responded, "[t]hat was in training through Law Enforcement Academy, the University of Missouri, going through constitutional law and the trainings, so on

and so forth." [Filing No. 37-1 at 40-41.] Deputy Harrold testified that he had received such training as recently as "two years ago." [Filing No. 37-1 at 41.]

Mr. Loveless does not allege that the Sheriff's Department failed to act in response to repeated complaints of constitutional violations by its officers, so he must seek to proceed under the second route: that the Sheriff's Department failed to provide adequate training in light of foreseeable consequences. Deputy Harrold's testimony regarding the source of the "Clear View Statute" training he received is unclear. He neither specifically states nor specifically denies that he received that training from the Sheriff's office. But he testified that he had been employed by Henry County for four years, so training he received two years prior could have been conducted by Sheriff McCorkle or another individual at the Sheriff's Department. Defendants point to no testimony by Sheriff McCorkle stating that he did not provide the subject training, and Sheriff McCorkle testified that he requires a 40-hour training course for reserve units. A reasonable inference could be drawn from this testimony that Deputy Harrold received the subject training from the Sheriff's office, particularly when viewing the evidence in the light most favorable to Mr. Loveless, as the non-moving party.

But the threshold for proving a failure-to-train claim is high, and it requires more than simply identifying the source of the training. It requires that Mr. Loveless show that the failure to train "reflect[s] a conscious choice among alternatives." *Miranda*, 900 F.3d 335. This he has not done. Mr. Loveless' failure to point to any evidence as to the source or content of the training means that he has provided no basis upon which a reasonable jury could conclude that the training reflects a conscious choice among alternatives. Defendants are therefore entitled to summary judgment as to this claim, and the Court **GRANTS** that Motion.

**D. Sheriff McCorkle and Deputy Harrold: Common-Law Trespass**

Defendants argue that they are entitled to summary judgment on Mr. Loveless' common-law trespass claim, because they are immune from suit under the Indiana Tort Claims Act. [Filing No. 36 at 15.] Defendants contend that they are entitled to "law enforcement immunity" as to any official-capacity claim, because Deputy Harrold was acting within the scope of his employment when he entered Mr. Loveless' property, and was engaged in law enforcement at the time of the incident. [Filing No. 36 at 16-17.] In response, Mr. Loveless argues that Defendants are not entitled to law enforcement immunity because Deputy Harrold exceeded his authority for serving civil process, and was therefore not enforcing a law at the time of the trespass. [Filing No. 38 at 7.] Defendants do not provide a reply regarding this claim.

The Indiana Tort Claims Act generally governs tort claims against governmental entities and public employees. Ind. Code § 34-13-3-1 *et seq*. One provision provides that a governmental entity or an employee acting within the scope of the employee's employment is not liable for a tort when any loss suffered results from "[t]he adoption and enforcement of or failure to adopt or enforce…a law (including rules and regulations)…unless the act of enforcement constitutes false arrest or false imprisonment." Ind. Code § 34-13-3-3(8). The resulting non-liability regime is commonly referred to as "law enforcement immunity" under the ITCA.

Indiana Code § 34-13-3-3 does not define "enforcement of a law." Defendants take the position that the service of process always constitutes the enforcement of a law. In support of that position, they point to Indiana Code § 35-44.1-3-1. That statute provides, in relevant part, that a person who knowingly or intentionally:

> (1) forcibly resists, obstructs, or interferes with a law enforcement officer or a person assisting the officer while the officer is lawfully engaged in the execution of the officer's duties; [or]

(2) forcibly resists, obstructs, or interferes with the authorized service or execution
of a civil or criminal process or order of a court…

commits "resisting law enforcement." Indiana Code § 35-44.1-3-1. Defendants contend that this constitutes an implicit recognition that service of process is inherently a "law enforcement function." [Filing No. 36 at 17.]

A case from the Indiana Court of Appeals, however, undermines Defendants' contention that service of process always constitutes enforcement of a law. *Casselman v. State*, 472 N.E.2d 1310 (Ind. Ct. App. 1985). In that case, a sheriff's deputy attempted to execute a writ of body attachment as to Mr. Casselman at his home. *Casselman*, 472 N.E.2d at 1311. After opening the door to the deputy's knock, Mr. Casselman directed the deputy to contact his attorney and attempted to close the door. *Id.* at 1312. The deputy grabbed the door and put his foot in front of it to prevent it from closing. *Id.* After a "shoving match," Mr. Casselman retreated into his house. *Id.* The deputy followed, pulling his service revolver and ultimately taking Mr. Casselman into custody. *Id.* Mr. Casselman was convicted of resisting law enforcement, in violation of an earlier version of the statute relied upon by Defendants here. *Id.* He appealed his conviction. *Id.*

The court noted, as has this Court in exploring the parameters of civil process in the state of Indiana, that "'[i]t is remarkable that upon a question of such frequent recurrence in practice, and of so much importance in relation to the service of civil process and the powers and duties of officers therein, no direct judicial authority is to be found.' These words which remain applicable today were written by Chief Justice Shaw." *Id.* at 1313 (quoting *Ilsley v. Nichols* (1831), 29 Mass. (12 Pick.) 269). The court noted generally that the sheriff's deputy was serving a writ of body attachment, and not an arrest warrant, and therefore that the deputy could not claim the right to exercise the powers associated with the service of an arrest warrant. *Id.* at 1212. The indictment

did not specify whether Mr. Casselman was being charged with violating the first or second subpart of the provision, so the court analyzed both.

As to subpart one, or obstruction of a law enforcement officer while lawfully engaged in the execution of the officer's duties, the court concluded that existing caselaw "[stood] for the proposition that in matters concerning merely civil process, the courts of this land have been zealous in protecting against the authority of government to force entry into a private dwelling." *Id.* at 1314. The court then concluded that because the deputy overstepped his authority in preventing Mr. Casselman from closing the door to his home, the deputy was not lawfully engaged in the execution of civil process. *Id.* As to subpart two, the same subpart invoked by Defendants here, the court concluded that:

> [i]f the term 'authorized' is intended to express the lawful manner of service, [the sheriff's deputy's] actions were unauthorized as discussed above. If the term is meant to describe the fact that the service of process had been approved by a judicial officer, we reach the same result. The court did authorize [the deputy] to arrest [Mr.] Casselman pursuant to the writ. However, the extent of that authority is necessarily limited.

*Id.* at 1317-18.

In short, the Indiana Court of Appeals concluded that an individual could not be held criminally liable under the statute invoked here by Defendants when a law enforcement officer has exceeded his lawful authority in serving process. That court's treatment of the issue of service of process suggests at a minimum that facts regarding the type of process and the circumstances of service should factor into a court's determination as to whether the subject activities constitute enforcement of a law. Defendants have provided no information regarding the process at issue, although the Court gathers from deposition testimony that it involved a child support issue. [Filing No. 37-4 at 34-35.] On this record, the Court simply cannot conclude that Defendants are entitled

to immunity under the ITCA, on the basis that Deputy Harrold was "enforcing a law." The Court therefore **DENIES** Defendants' Motion as to that claim.

### E. Deputy Harrold: Individual Capacity State-Law Tort Claims

Defendants argue that even if law enforcement immunity does not apply, Deputy Harrold cannot be held individually liable for "any torts defined by state law," which here include Mr. Loveless' claims for battery, assault, false imprisonment, and trespass. [Filing No. 36 at 18.] Defendants contend that Mr. Loveless has conceded that Deputy Harrold was acting within the scope of his employment, and therefore that the ITCA immunizes Deputy Harrold from personal liability. [Filing No. 36 at 18-19.] Mr. Loveless responds that because Deputy Harrold's actions were willful and wanton or malicious, Deputy Harrold is not entitled to individual immunity. [Filing No. 38 at 14-15.]

The parties' briefing as to this issue presents an example of the proverbial ships passing in the night: Defendants do not raise any argument as to Mr. Loveless' contentions regarding willful and wanton or malicious conduct, so their Motion turns only on whether Mr. Loveless has alleged that Deputy Harrold was acting within the scope of his employment. Mr. Loveless, in turn, addresses only the willful, wanton, or malicious element of the statutory scheme, not addressing whether Deputy Harrold was acting within the scope of his employment.

Indiana Code § 34-13-3-5(b) provides, in relevant part, that a lawsuit "alleging that an employee acted within the scope of the employee's employment bars an action by the claimant against the employee personally." This provision provides a government employee with a "complete defense" where an employee is sued for actions that occurred within his scope of employment. *See Bushong v. Williamson*, 790 N.E.2d 467, 472 (Ind. 2003). Where a complaint does not allege that an employee acted within the scope of his employment, it must "allege that an

act or omission of the employee that causes a loss is: (1) criminal; (2) clearly outside the scope of the employee's employment; (3) malicious; (4) willful and wanton; or (5) calculated to benefit the employee personally." Ind. Code § 34-13-3-5(c).

In his Complaint, Mr. Loveless alleges that "[o]n the afternoon of Saturday, August 1, 2015, Deputy Harrold was working in furtherance of his employer, Sheriff McCorkle's business[,] attempting to serve Loveless' granddaughter Kayla Garner with civil process at Loveless' address." [Filing No. 1 at 2.] And in his briefing, Mr. Loveless concedes that Deputy Harrold was acting within the scope of his employment as to the events underlying the IIED claim. [Filing No. 38 at 7.] The allegations underlying Mr. Loveless' assault, battery, and false imprisonment claims overlap with the IIED allegations, and Mr. Loveless does not point to any additional, distinguishing facts. These identical facts, along with Mr. Loveless' IIED concession and the allegation as to Deputy Harrold acting to further his employer's business, lead the Court necessarily to the conclusion that Deputy Harrold was operating within the scope of his employment as to those claims. The Court therefore **GRANTS** Defendants' Motion as to these claims.

The trespass claim is not so straightforward, for the reasons discussed above regarding immunity under Ind. Code § 34-13-3-3(8). In support of their Motion, Defendants rely solely on Mr. Loveless' allegation that "Deputy Harrold was working in furtherance of his employer" when the allegedly offending conduct occurred. They have not established that this statement alone, however, is sufficient to confer individual liability, the facts differ from those underlying the IIED claim, and Mr. Loveless has made no concessions as to scope of employment on this claim. *See, e.g., Hebert v. Porter Cty., Ind.*, 2007 WL 2363835, at *4 (N.D. Ind. 2007) ("It is true that Plaintiff has alleged in the Complaint that the officers were employed by the Sheriff's Department, and that they were following an unconstitutional policy of the Sheriff's Department in seizing his firearms

and removing him from his home. But elsewhere in the complaint Plaintiff alleges that the officers 'knowingly or intentionally exerted unauthorized control' over his firearms, and 'converted [them] to their own value and use.' He further alleges that the officers acted with 'gross negligence, malice or with reckless indifference.' These allegations go beyond a claim that the officers were acting within the scope of their employment."). Given these issues, and that the question of the scope of employment is typically one for the factfinder, the Court **DENIES** Defendants' Motion as to the trespass claim.

## IV.
### CONCLUSION

For the reasons described above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment, [35], as follows:

The Court **GRANTS** Defendants' Motion as to:

- All claims for violation of Article I, Section 11 of the Indiana Constitution;

- IIED claims against Sheriff McCorkle and Deputy Harrold;

- Individual capacity claims against Sheriff McCorkle for unreasonable search and seizure and excessive force, under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution;

- Official capacity claims against Sheriff McCorkle and Deputy Harrold for unreasonable search and seizure and excessive force, under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution; and

- Common law battery, assault, and false imprisonment claims against Deputy Harrold.

The Court **DENIES** Defendants' Motion as to:

- Individual capacity claim against Deputy Harrold for unreasonable search and seizure under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution; and

- Common law trespass claim under Indiana law against Deputy Harrold.

Remaining for resolution are:

- Individual capacity claims against Deputy Harrold for unreasonable search and seizure and excessive force under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution;

- Common law battery, assault, false imprisonment, and trespass against Sheriff McCorkle;

- Common law trespass against Deputy Harrold; and

- Violation of Ind. Code § 35-33-5-7(e) against Sheriff McCorkle and Deputy Harrold.

The Court requests that the Magistrate Judge confer with the parties at his earliest convenience regarding possible resolution of the remaining claims.

Date: 9/20/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record.**